NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0425n.06

No. 18-5418

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

ADRIAN AUSBERRY,

        Defendant-Appellant.

**FILED**
Aug 15, 2019
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF
TENNESSEE

BEFORE:    NORRIS, CLAY, and SUTTON, Circuit Judges.

**CLAY, Circuit Judge.** Adrian Ausberry pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court increased Ausberry's Guidelines range based on its retroactive application of our decision in *United States v. Verwiebe*, 874 F.3d 258 (6th Cir. 2017), where we held that convictions for offenses with a *mens rea* of recklessness can constitute crimes of violence for purposes of the Sentencing Guidelines. Ausberry argues that the district court violated his due process rights by retroactively applying our decision in *Verwiebe* to enhance his Guidelines range. Alternatively, Ausberry contends that *Verwiebe* and another published decision from this Court were wrongly decided.

As explained below, we affirm.

## I. BACKGROUND

On February 8, 2017, the Chattanooga Police Department executed a search warrant on a residence and found Ausberry, a convicted felon, in possession of a firearm. A federal grand jury indicted Ausberry for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). On August 9, 2017, Ausberry pleaded guilty without a written plea agreement.

Under the Sentencing Guidelines, a defendant faces a heightened Base Offense Level if he possesses a firearm after sustaining "felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(4). A felony conviction qualifies as a "crime of violence" of it "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1).

When Ausberry committed and pleaded guilty to the firearms offense, this Circuit's binding precedent provided that a previous conviction for a crime with a *mens rea* of recklessness could not qualify as a crime of violence under the Sentencing Guidelines. *See United States v. McFalls*, 592 F.3d 707 (6th Cir. 2010). After Ausberry pleaded guilty, but before he was sentenced, this Court decided *Verwiebe*, which overturned *McFalls* and held that an offense with a *mens rea* of recklessness can constitute a crime of violence.

Prior to Ausberry's sentencing, probation prepared a Presentence Investigation Report ("PSI"). The PSI calculated Ausberry's Base Offense Level as 24 because it found that Ausberry had two prior felony convictions for either a crime of violence or a controlled substance offense. One of Ausberry's two prior felony convictions was for reckless aggravated assault under Tennessee law, which did not qualify as a crime of violence under *McFalls* but does under *Verwiebe*.[1] After upwards adjustments for specific offense characteristics and downward adjustments for acceptance of responsibility, Ausberry's Total Offense Level was 27. Based on a Criminal History Category of VI and a Total Offense Level of 27, the PSI calculated Ausberry's initial Guidelines range as 130 to 162 months of imprisonment. However, because the statutory 10-year maximum term of imprisonment was lower than the applicable Guidelines range,

---

[1] Ausberry did not dispute the PSI's finding that his second prior felony conviction, for possession of cocaine for resale, constituted a "controlled substance offense" under U.S.S.G. § 2K2.1(a)(4).

Ausberry's final Guidelines sentence was 120 months of imprisonment—the maximum term permitted by statute.

Ausberry objected to the PSI's finding that his conviction for reckless aggravated assault under Tennessee law qualified as a crime of violence. Ausberry argued that applying *Verwiebe* to enhance his Guidelines range would violate due process because at the time he committed and pleaded guilty to his firearms offense, *McFalls* was binding precedent in this Circuit. Absent the retroactive enhancement based on *Verwiebe*, Ausberry's Total Offense Level (after adjustments) would have been 23 (instead of 27) and his Guidelines range would have been 92 to 115 months of imprisonment (instead of 120 months). Ausberry argued that due process required that the district court sentence him under the less onerous, pre-*Verwiebe* Guidelines range.

The district court overruled Ausberry's objections to the PSI and found that his reckless aggravated assault conviction qualified as a crime of violence under *Verwiebe*. The district court then granted Ausberry's motion for a downward variance from his Guidelines term of 120 months of imprisonment and imposed a 115-month sentence.

This timely appeal followed.

## II.  DISCUSSION

### A.  Due Process Claim

Ausberry contends that the district court violated his due process rights by subjecting him to a higher Guidelines range based on its retroactive application of *Verwiebe*. In response, the government argues the district court did not violate Ausberry's due process rights because the Supreme Court has held that the advisory Guidelines do not implicate fair warning concerns. As explained below, we hold that the district court did not violate Ausberry's due process rights.

### 1. Relevant Legal Principles

The *Ex Post* Facto Clause of the United States Constitution provides that "[n]o State shall . . . pass any . . . ex post facto Law." U.S. Const. art. I, § 10, cl. 1. Over two centuries ago, the Supreme Court held that "[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed" fell "within the words and the intent of the [constitutional] prohibition." *Calder v. Bull*, 3 Dall. 386, 390 (1798) (describing *ex post facto* laws as "manifestly unjust and oppressive"). However, "the text of the [*Ex-Post Facto*] Clause makes clear [that] it 'is a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch of government.'" *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001) (quoting *Marks v. United States*, 430 U.S. 188, 191 (1977)). Further, the Supreme Court has held that challenges to retroactive applications of judicial decisions must proceed under due process, not the *Ex Post Facto* Clause. *See id.* at 460–62.

"[C]ore due process concepts [include] notice, foreseeability, and, in particular, the right to fair warning[.]" *Id.* 459. Using these due process principles, the Supreme Court has held that retroactive application of judicial decisions that unforeseeably expand the scope of criminal liability can violate a defendant's due process rights. *See, e.g.*, *Marks v. United States*, 430 U.S. 188 (1977); *Bouie v. City of Columbia*, 378 U.S. 347 (1964). This Court has previously indicated that due process principles of notice and fair warning could also "protect individuals . . . from *ex post* applications of unforeseeable judicial expansions of the *punishments* that result from a conviction." *United States v. Beals*, 698 F.3d 248, 272 (6th Cir. 2012).

The Supreme Court has held that the advisory Sentencing Guidelines do not implicate the fair-warning concerns that due process protects. In *Irizarry v. United States*, 553 U.S. 708 (2008), the Supreme Court held that Federal Rule of Criminal Procedure 32(h) does not require that the

sentencing court notify a criminal defendant that the court plans to vary upwards from the Guidelines range because "[t]he due process concerns that motivated the Court to require notice in a world of mandatory Guidelines no longer" pertain. *Id.* at 714. And more recently, in *Beckles v. United States*, 137 S. Ct. 886 (2017), the Supreme Court held that the Sentencing Guidelines are not subject to a due process void-for-vagueness challenge because "[t]he advisory Guidelines . . . do not implicate the twin concerns underlying vagueness doctrine—providing notice and preventing arbitrary enforcement." *Id.* at 894. The Supreme Court explained that "even perfectly clear Guidelines could not provide notice to a person who seeks to regulate his conduct so as to avoid particular penalties within the statutory range . . . because even if a person behaves so as to avoid an enhanced sentence under the career-offender guideline, the sentencing court retains discretion to impose the enhanced sentence." *Id.* The Supreme Court concluded that "[a]ll of the notice required is provided by the applicable statutory range, which establishes the permissible bounds of the court's sentencing discretion." *Id.*

### 2. Application to the Matter at Hand

The district court did not violate Ausberry's due process rights by applying *Verwiebe* retroactively to increase Ausberry's Guidelines range. Due process is concerned with "notice, foreseeability, and, in particular, the right to fair warning[.]" *Rogers*, 532 U.S. at 459. The Supreme Court has held that "[a]ny expectation subject to due process protection . . . that a criminal defendant would receive a sentence within the presumptively applicable Guidelines range did not survive [the Supreme Court's] decision in *United States v. Booker*, 543 U.S. 220 (2005), which invalidated the mandatory features of the Guidelines." *Irizarry*, 553 U.S. at 713. Further, the Supreme Court has stated that the advisory Guidelines "do not implicate" fair-warning concerns and that the statutory range associated with a conviction provides "[a]ll the notice required" under

the advisory Guidelines. *Beckles*, 137 S. Ct. at 894. The Supreme Court's reasoning in *Irizarry* and *Beckles* requires that we hold that the district court did not violate Ausberry's due process rights by retroactively applying *Verwiebe* to enhance his Guidelines range.

Ausberry relies on *Peugh v. United States*, 569 U.S. 530 (2013) to argue that retroactive application of *Verwiebe* violated due process. In *Peugh*, the defendant was convicted of bank fraud arising out of conduct that occurred in 1999 and 2000. *Id*. at 533. The defendant faced a Guidelines range of 30 to 37 months under the version of the Guidelines that was in effect when he committed the offense. *Id*. at 534. But new Guidelines had taken effect before sentencing, which increased the defendant's Guidelines range to 70 to 87 months. *Id*. The Supreme Court held that the district court violated the *Ex Post Facto* Clause by sentencing the defendant under the "more onerous" Guidelines in effect at the date of his sentencing, rather than under the less punitive Guidelines that had been in force when he committed the offense. *Id*. at 538. The Court explained that "[d]istrict courts must begin their sentencing analysis with the Guidelines in effect at the time of the offense and use them to calculate the sentencing range correctly" because "those Guidelines will anchor both the district court's discretion and the appellate review process . . . ." *Id*. at 549. Relying on *Peugh*, Ausberry argues that just as subjecting a defendant to a higher Guidelines range by retroactively applying an amendment to the Guidelines violates the *Ex Post Facto* Clause, subjecting Ausberry to a higher Guidelines range by retroactively applying this Court's decision in *Verwiebe* violated due process.

The Court is not unsympathetic to Ausberry's argument. At first blush, *Peugh* appears to support Ausberry's contention that the district court violated his due process rights. But *Peugh* was firmly rooted in the *Ex Post Facto* Clause, not due process. In fact, *Peugh* reiterated that "a defendant *does not* have an 'expectation subject to due process protection' that he will be sentenced

within the Guidelines range." *Id.* at 545 (emphasis added) (quoting *Irizarry*, 553 U.S at 713–14). Because the *Ex Post Facto* Clause does not apply to retroactive applications of judicial decisions, *see Rogers*, 532 U.S. 451, and because the *Ex Post Facto* Clause and the Due Process Clause are not coextensive, *see id.* at 458, *Peugh* does not extend to judicial decisions interpreting the Sentencing Guidelines that retroactively increase a defendant's Guidelines range.

Ausberry emphasizes the Supreme Court's statement in *Rogers* that "limitations on *ex post facto* judicial decisionmaking are inherent in the notion of due process." *Rogers*, 532 U.S. at 456. But *Rogers* does not support Ausberry's argument that the district court violated his due process rights. In *Rogers*, the Supreme Court explained that *Bouie* "was rooted firmly in well-established notions of *due process*" such as "notice, foreseeability, and in particular, the right to fair warning[.]" *Id.* at 459. And the Supreme Court clarified that challenges to retroactive applications of judicial decisions must proceed under due process. *Id.* at 460–62. Because the Supreme Court has subsequently held that the Sentencing Guidelines do not implicate the fair-warning concerns that due process protects, *see Irizarry* and *Beckles*, *Rogers* did not prevent the district court from applying *Verwiebe* retroactively to increase Ausberry's Guidelines range.

**B. Under This Circuit's Binding Precedent, Reckless Aggravated Assault Under Tennessee Law Is a Crime of Violence**

Ausberry additionally argues that the district court erred by finding that his prior conviction for reckless aggravated assault under Tennessee law constitutes a crime of violence for purposes of the Sentencing Guidelines. Ausberry asserts Tennessee's reckless aggravated assault, Tenn. Code Ann. § 39-13-102 (2005)[2], may be violated by reckless driving that results in injury; he

---

[2] This is the version of Tennessee's aggravated assault statute that was in force when Ausberry was convicted for reckless aggravated assault in 2005. The subsequent modifications to the portions of the statute concerning reckless aggravated assault are immaterial to our analysis. *Compare* Tenn. Code Ann. § 39-13-102(a)(1)(B) (2005), *with* Tenn. Code Ann. § 39-13-102(a)(2) (2019).

contends that the Sentencing Commission did not intend to increase the Guidelines range for a defendant who had committed a reckless driving offense. In response, the government argues that Ausberry's argument fails because this Court has repeatedly held that reckless aggravated assault under Tennessee law qualifies as a crime of violence.

This Circuit has held, in a published decision, that reckless aggravated assault under Tennessee law categorically qualifies as a crime of violence. *United States v. Harper*, 875 F.3d 329, 330 (6th Cir. 2017); *see also United States v. Borden*, 769 F. App'x 266, 268 (6th Cir. 2019) (explaining that "*Harper* remains controlling authority in this circuit and aggravated assault in Tennessee categorically qualifies as a crime of violence"); *see also Lowe v. United States*, 920 F.3d 414, 416, n.1 (6th Cir. 2019) (holding that, under this Circuit's binding precedent, "both reckless and intentional aggravated assault in Tennessee qualify as violent felonies"). In this Circuit, "a published prior panel decision 'remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.'" *United States v. Elbe*, 774 F.3d 885, 891 (6th Cir. 2014) (quoting *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985)). Because there is neither an intervening Supreme Court decision nor a decision from this Court sitting en banc, *Harper* is binding on this Court. Thus, Ausberry's conviction for reckless aggravated assault in Tennessee qualifies as a crime of violence.

In his reply brief, Ausberry alternatively contends that *Verwiebe* was wrongly decided. Ausberry waived this argument by failing to raise it in his principal brief. *See, e.g.*, *Am. Trim, L.L.C. v. Oracle Corp.*, 383 F.3d 462, 477 (6th Cir. 2004) (explaining that "this court has consistently held that we will not consider" arguments presented for the first time in a reply brief). And even if we were to consider Ausberry's argument, we would not overturn our decision in

*Verwiebe*. Because *Verwiebe* is a published opinion and there is neither an intervening Supreme Court decision nor a decision from this Court sitting en banc, *Verwiebe* remains binding precedent in this Circuit. *See Harper*, 875 F.3d at 330 (expressing disagreement with *Verwiebe*'s holding but stating that the Court is nonetheless "bound" to follow *Verwiebe*).

### III.  CONCLUSION

For the above-stated reasons, we affirm.